AMY MACLEAR (SBN 215638)
amaclear@shb.com
SAMANTHA K.N. BURNETT (SBN 320262)
sburnett@shb.com
SHANE B. KOLDING (SBN 312948)
skolding@shb.com
**SHOOK, HARDY & BACON L.L.P.**
555 Mission Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 544-1900
Facsimile: (415) 391-0281

Attorneys for Defendants
FORD MOTOR COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMANTHA MARTA and CARLOS MARTA,<br><br>Plaintiffs,<br><br>vs.<br><br>FORD MOTOR COMPANY; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO: 2:22-cv-1456<br><br>**NOTICE OF REMOVAL OF ACTION; DEMAND FOR JURY TRIAL**<br><br>Complaint Filed: 10/5/2021<br><br>[Filed concurrently herewith Declaration of Samantha K.N. Burnett; Notice of Related Cases Pursuant to L.R. 83-1.3.1; Certification and Notice of Interested Parties; Civil Cover Sheet] |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND ALL PARTIES:**

**PLEASE TAKE NOTICE THAT** Defendant FORD MOTOR COMPANY ("Ford") hereby removes to this Court the state action entitled *Samantha Marta, et al. v. Ford Motor Company, et al*. Case No. 21STCV36721, from the Superior Court of the County of Los Angeles, to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

**I. Nature of the Removed Case**

1.     Plaintiffs Samantha Marta and Carlos Marta filed this civil action against Ford in the Superior Court of California, County of Los Angeles, on October 5, 2021.

A true and correct copy of the Summons and Complaint is attached as Exhibit A to the Declaration of Samantha K.N. Burnett "Burnett Decl."), ¶¶ 2-3.

2.    Plaintiffs assert seven causes of action, six of which are against Ford, including claims under the Song-Beverly Consumer Warranty Act for breach of express warranty and breach of the implied warranty of merchantability, as well as a claim for fraudulent inducement - concealment. *See* Compl., First through Sixth Causes of Action (Exh. A to Burnett Decl.). Ford denies these allegations. Plaintiffs' seventh cause of action for Negligent Repair was asserted against Raceway Ford. *Id*., Seventh Cause of Action.

3.    Plaintiffs seek actual damages plus a civil penalty equaling twice the amount of actual damages pursuant to Civil Code sections 1793.2(d) and 1794(c) or (e), as well as damages pursuant to their Fraudulent Inducement – Concealment claim. *See, e.g*., Compl., ¶¶ 15-17, 22, 25, 29, 34, and Prayer. Plaintiffs also seek punitive damages. *Id*., Prayer.

4.    On January 31, 2022, Ford timely filed an answer to Plaintiffs' Complaint in the state action, a true and correct copy of which is attached as Exhibit B to the Burnett Decl., ¶¶ 5–6.

5.    On February 2, 2022, Plaintiffs filed a Request for Dismissal to dismiss Raceway Ford from this case, a true and correct copy of which is attached as Exhibit C to the Burnett Decl., ¶¶ 7-8.  The court entered the dismissal on February 3, 2022. A true and correct copy of the court's entry of dismissal is attached as Exhibit D to the Declaration of Samantha K.N. Burnett. Burnett Decl., ¶¶ 9-10.

**II. Ford Has Satisfied the Procedural Requirements for Removal.**

6.    A notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *See* 28 U.S.C. § 1446(b)(3).

7.    This case became removable upon Plaintiffs' filing and service of the Request for Dismissal of Raceway Ford from this action on February 2, 2022. Burnett Decl. ¶¶ 7-10.

8.    Ford filed this Notice of Removal on March 3, 2022, within "30 days after receipt by the defendant … of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *See* 28 U.S.C. § 1446(b)(3); *see also* Burnett Decl. ¶ 11. This Notice of Removal is therefore timely filed.

9.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Ford in the state action are contained in Exhibits A, B, C, and D to the Declaration of Samantha K.N. Burnett.

10.    This Court is the proper venue for removal under 28 U.S.C. § 1446(a) because it is "the district and division embracing the place where such action is pending," namely Los Angeles County.

11.    Pursuant to 28 U.S.C. § 1446(d), written notice of this removal will be filed with the Clerk of the Superior Court of California, County of Los Angeles, and Ford will serve a copy of this Notice of Removal on all parties to the state action.

**III.    Removal Is Proper Because This Court Has Subject Matter Jurisdiction Pursuant to 28 U.S.C. §§ 1332 and 1441.**

12.    This Court has subject matter jurisdiction because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states. 28 U.S.C. § 1332(a).

**A. Diversity of citizenship exists between the parties.**

13.    Removal under 28 U.S.C. § 1441(b) is appropriate because complete diversity of citizenship exists between Plaintiffs and Ford.

14.    Plaintiffs are citizens of California. Burnett Decl., ¶ 12; *and see* Compl., ¶2. For purposes of removal based on diversity of citizenship, a plaintiffs' state of residence is presumptively considered to be their state of citizenship. *See Bradley*

NOTICE OF REMOVAL OF ACTION
CASE NO. 2:22-cv-1456

*Min. Co. v. Boice*, 194 F.2d 80, 84 (9th Cir. 1951); *see also Anderson v. Watt*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary.").

15.    At the time Plaintiffs commenced this action, Ford was (and still is) a Delaware corporation with its principal place of business in Michigan and, thus, for jurisdictional purposes, a citizen of those two states. *See* Burnett Decl., ¶ 13; 28 U.S.C. § 1332(c)(1).

16.    This Court therefore has original jurisdiction of this action under 28 U.S.C. § 1332 because the remaining defendant in this case is a citizen of Delaware and Michigan, while Plaintiffs are citizens of California.

**B. The amount-in-controversy requirement is satisfied.**

17.    The amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

18.    To determine the amount in controversy, a district court should first "consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy," *i.e.*, that the amount exceeds the threshold. *Abrego Abrego v. Dow Chem. Co*., 443 F.3d 676, 690 (9th Cir. 2006) (citation omitted). If the amount in controversy is not facially apparent, the court then considers whether the notice of removal plausibly alleges that the amount exceeds the threshold. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87–88 (2014). Plausible allegations alone may be sufficient; evidence is required only if the plaintiff contests, or the court questions, the plausibility of the defendant's allegations. *Id*. at 89, 95; *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019). If the defendant's allegations are challenged, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin*, 574 U.S. at 87–88.

19.    For purposes of determining the amount in controversy, "a court must assume that the allegations of the complaint are true and that a jury will return a

NOTICE OF REMOVAL OF ACTION
CASE NO. 2:22-cv-1456

verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).

20.   A defendant's showing may rely on reasonable assumptions when estimating the amount in controversy. *Arias*, 936 F.3d at 922. It does not "need to prove to a legal certainty that the amount in controversy requirement has been met." *Dart Cherokee Basin*, 574 U.S. at 88–89 (*citing* H.R. Rep. No. 112-10 at p. 16 (2011)). The standard is preponderance of the evidence. Where a defendant shows that damages would exceed the threshold, "it then becomes plaintiff's burden to show, as a matter of law, that it is certain he will not recover the jurisdictional amount." *Canesco v. Ford Motor Co.*, No. 3:21-cv-00425-BEN, 2021 WL 5122231, at *7 (S.D. Cal. Nov. 4, 2021) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

21.   Here, it is not "facially apparent" that the amount in controversy exceeds $75,000, in that Plaintiffs do not expressly allege they seek more than that amount. On the Civil Case Cover Sheet, Plaintiffs indicated that [the] "amount demanded exceeds $25,000." *See* Compl., Civil Cover Sheet. But it is easy to show that in fact the amount in controversy will significantly exceed $75,000.

22.   Plaintiffs seek, *inter alia*, restitution, consequential and incidental damages, civil penalties "in the amount of two times Plaintiffs' actual damages," reasonable attorney's fees, prejudgment interest, and such other relief as the Court may deem proper. *See* Compl., at Prayer. Under the Song-Beverly Act, restitution is "the amount equal to the actual price paid or payable by the buyer … and including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental and consequential damages to which the buyer is entitled under Section 1794, including but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B); Cal. Civ. Code § 1794(b). (emphasis added).

23.    Plaintiffs allege that on or about November 23, 2018, they purchased a new 2018 Ford Fiesta. *See* Compl., ¶ 9.

24.    The Retail Installment Sales Contract, obtained by Ford, shows Plaintiffs agreed to pay $35,749.44 for the 2018 Ford Fiesta. *See* Burnett Decl., ¶15. The RISC identifies Plaintiffs as the buyer and the Subject Vehicle by VIN. *Id*. Thus, Plaintiffs are seeking restitution of at least $35,749.44. This figure, then, represents the actual price paid or payable under Cal. Civ. Code § 1793.2(d)(2)(B); *see also Bui v. Mercedes-Benz USA, LLC*, No. 20-CV-1530-CAB-WVG, 2020 WL 12688081, *2 (S.D. Cal. Sept. 30, 2020) (the amount in controversy includes all amounts paid and payable, including the down payment, finance charges and interest).

25.    Further, civil penalties under the Song-Beverly Act are properly included in the amount-in-controversy calculation. *See Canesco*, 2021 WL 5122231, at *19–20 (collecting cases); *Brady v. Mercedes-Benz USA, Inc*., 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002); *see also Zeto v. BMW NA*, No. 20-cv-1380-GPC-KSC, 2020 WL 6708061, at *4 (S.D. Cal. Nov. 16, 2020) ("[C]ivil penalties are not speculative and should be included…. While courts may need to be wary of punitive damages inflating the amount in controversy as a general concern, not much scrutiny is needed when the Song-Beverly Act expressly states the contours of the damages, and Plaintiff requests that amount.")

26.    The Song-Beverly Act allows a civil penalty of up to twice the amount of actual damages. Cal. Civ. Code § 1794(c). Plaintiffs seek the maximum possible amount. *See, e.g.,* Compl., ¶¶ 15-17, 22, 25, 29, 34, and Prayer. That maximum amount is therefore properly included in the amount-in-controversy. *See Ghebrendrias v. FCA US LLC*, No. 2:21-CV-06492 (VAP), 2021 WL 5003352, at *2 (C.D. Cal. Oct. 28, 2021) (holding Plaintiff's civil penalty allegations sufficient to include maximum civil penalties in amount in controversy); *Park v. Jaguar Land Rover N. Am.*, LLC, No. 20- cv-00242-BAS, 2020 WL 3567275, at *6 (S.D. Cal. July 1, 2020) (holding "Defendant's assumption that the amount in controversy includes

the maximum amount of civil penalties is reasonable" because "this assumption is founded on the allegations of the Complaint.").

27.    A defendant may base its estimate on reasonable assumptions (*Arias*, 936 F.3d at 927) and need not prove that it will be subject to civil penalties. *See, e.g. Canseco*, No. 3:21-cv-00425-BEN-RBB, 2021 WL 5122231, at *19 (siding with "the majority of courts and more recent cases" that "find civil penalties appropriate for inclusion in the calculation of the amount in controversy without the defendant needing to 'prove a case against itself' with respect to liability for civil penalties."); *Treuhaft v. Mercedes-Benz USA, LLC*, No. 2:20-cv-11155-SVW, 2021 WL 2864877, *2 (C.D. Cal. July 6, 2021) (holding civil penalty claim of twice actual damages requires including that amount regardless of whether defendant presented evidence); *Rahman v. FCA US LLC*, No. 2:21-cv-02584-SB, 2021 WL 2285102, at *2-3 (C.D. Cal. June 4, 2021) ("Defendant is not required to prove the case against itself"); *Brooks v. Ford Motor Co*., No. CV 20-302 DSF (KKx), 2020 WL 2731830, at *2 (C.D. Cal. May 26, 2020) ("It would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with the Song-Beverly Act").

28.    If Plaintiffs were to prevail on their Song-Beverly Act claims alone, they could be awarded well over $75,000. Plaintiffs allege actual damages—the actual price paid or payable—of at least $35,749.44 (the purchase price of their vehicle), and could be awarded up to twice that amount in civil penalties, for a total amount in controversy of $63,015.45. Adding to this any award of incidental damages (such as Plaintiffs' claim for registration fees and insurance costs) and consequential damages, reasonable attorneys' fees and other remedies under the Song-Beverly Act, and an

award of damages pursuant to the fraudulent inducement claim, the amount-in-controversy in this case is well over the $75,000 threshold.[1] *See* Burnett Decl., ¶ 17-18.

29.    This conclusion is unaffected by the possibility of a mileage offset. The statutory repurchase amount under the Song-Beverly Act may be "reduced by … that amount directly attributable to use by the buyer prior to the discovery of the nonconformity." *See* Cal. Civ. Code § 1793.2(d)(2)(C). This is calculated by taking the number of miles driven before the first repair attempt divided by 120,000 and multiplying that figure by the vehicle's purchase price. *See id*.; *see also Wickstrum v. FCA USA LLC*, No.: 3:20-cv-00336-L-JLB, 2021 WL 532257, at *1-2 n.2 (S.D. Cal. Feb. 12, 2021). Here, Plaintiffs bought their 2018 Ford Fiesta with 13 miles on the odometer on November 23, 2018. *See* Burnett Decl., ¶ 16, 18. On October 10, 2019 with 42,439 miles on the odometer, Plaintiffs presented the 2018 Ford Fiesta to Raceway Ford located at 5900 Sycamore Canyon Boulevard, Riverside, California. Plaintiffs, thus, drove the vehicle for 42,426 miles prior to the discovery of the nonconformity. Multiplying this by the purchase price, excluding collateral charges, results in a mileage offset of $10,104.29. *Id*., ¶ 16. The amount in controversy is $63,015.45 even before considering damages based on Plaintiffs' cause of action for fraudulent inducement, claim for punitive damages, and attorney's fees. *Id.* (providing a detailed explanation of the mileage offset calculation).

30.    Minor inaccuracies in the mileage offset calculation cannot defeat jurisdiction because they would not reduce the amount in controversy so substantially that it would fall below the jurisdictional minimum. *Schneider v. Ford Motor Co*., 756 F. App'x 699, 702 (9th Cir. 2018) (reversing district court for improper remand

---

[1] A calculation of potential restitution damages based on information currently at Ford's disposal reveals a potentially recoverable amount of $21,005.15, which includes a mileage offset and incidentals. Adding the maximum potential civil penalty would yield a potential award of $63,015.45, even without considering attorneys' fees. *See* Burnett Decl., ¶ 18.

NOTICE OF REMOVAL OF ACTION
CASE NO. 2:22-cv-1456

under this circumstance). In any case, the mileage offset need not be included in the amount in controversy as this "offset is not automatic. [Defendant] would need to affirmatively (and successfully) raise it at trial…. Therefore, it is appropriate to rely on the total amount paid [plus maximum civil penalties] to determine the amount in controversy." *Wickstrum*, 2021 WL 532257, at *2; *Carillo v. FCA USA, LLC*, 2:21-cv-01229-CAS, 2021 WL 2711138 (C.D. Cal. June 29, 2021) ("[C]ourts in this district routinely calculate the amount of restitution a plaintiff may be entitled to recover under the Song-Beverly Act without applying any reduction to account for manufacturers' rebates.") (internal cites omitted); *Rahman*, 2021 WL 2285102, *3 ("Defendant is not required to definitively prove the entitlement to an offset to remove the case; rather, it is only required to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.") (citing *Dart Cherokee Basin*, 574 U.S. at 89, Arias, 936 F.3d at 927); *In Re: Ford Motor Co. DPS6 Powershift Transmission Products Liability Litig., No*. 18-ML-02814 (AB), 2018 WL 5905942, at *4 (C.D. Cal. Sep. 10, 2018) (The "amount in controversy is established by what the plaintiff demands, not by any reductions that a defendant might achieve through its defenses.").

31.    The Song-Beverly Act also allows for the recovery of attorney's fees. Cal. Civ. Code § 1794(d). Accordingly, the amount in controversy also includes reasonable estimates of past, present, and future attorney's fees. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met"; emphasis added). Attorneys' fees would also likely be significant if Plaintiffs prevailed. The hourly billing rate for Plaintiffs' counsel Tionna Dolin (as of 2017) ranges from $375 per hour to $425 per hour. In warranty cases, Ms. Dolin routinely seeks and is awarded attorneys' fees well in excess of $75,000.00.

32.   In similar automotive warranty cases handled by Plaintiffs' attorney Tionna Dolin since 2017, she and/or her firm, Strategic Legal Practices, APC, have been awarded, based on publically available information, attorney's fees and costs in the range of $12,054.00 to $90,858.18 per case. *See e.g., Adam Friedman, et al. v. FCA US, LLC, et al*, Los Angeles Superior Court, Case No. 20STCV06024, January 4, 2022 Order (finding $425.00 per hour and $450 per hour to be a reasonable rate and awarding $43,683.92 in fees and costs to SLP); *Juan Antonio Pacheco v. FCS US, LLC, et al*, Los Angeles Superior Court, Case No.19STCV32931, September 8, 2021 Order  (finding $350 to $425 per hour to be a reasonable rate and awarding $38,914.75 in fees and costs to SLP); *George E. Gamond, et al. V. FCA US, LLC, et al*, Los Angeles Superior Court, Los Angeles Superior Court, Case No. 19STCV18519, 2021 Cal. Super. LEXIS 24809, May 25, 2021 Order (finding $395 to $425 per hour to be a reasonable rate and awarding $21,042.50 in fees and costs to SLP); *Jose Adrian Frano Medina v. KIA Motors America, Inc*., Los Angeles Superior Court, Case No. 19STCV02985, April 29, 2021 (finding $395 to $425 per hour to be a reasonable rate and awarding $72,120.17 in fees and costs to SLP); *Igal Kahenassa v. Hyundai Motor America, et al*, Los Angeles Superior Court, Case No. 19STCV29944, March 4, 2021 Order (finding $395 per hour to be a reasonable rate and awarding $13,121.21 in fees and costs to SLP); *Michael Viramontes, et al. v. FCA US, LLC, et al*, Los Angeles Superior Court, Case No. 20STCV03353, 2021 Cal. Super. LEXIS 1297, March 2, 2021 Order (finding $425 per hour to be a reasonable rate and awarding $28,000 in fees and costs to SLP); *Nabil Fadel v. BMW of North America*, *LLC, et al*, Los Angeles Superior Court, Case No. 18STCV07395, February 28, 2020 Order (finding $425 per hour to be a reasonable rate and awarding a portion of $220,742.79 in fees and costs to SLP); *Jaime Sandoval v. FCA US, LLC*, Los Angeles Superior Court, Case No. BC686016, September 30, 2019 Order (finding $375 per hour to be a reasonable rate and awarding $90,858.18 in fees and costs to SLP); *Amanda L Loveless v. FCA US, LLC, et al*, Los Angeles Superior Court, Case

No. BC714368, April 4, 2019 Order(finding $375 per hour to be a reasonable rate and awarding $12,054 in fees and costs to SLP); *Gutta Madadian v. Maserati North America, Inc*., Los Angeles Superior Court, Case No. BC643094, March 19, 2019 Order (finding $375 per hour to be a reasonable rate and awarding $58,061 in fees and costs to SLP); *Ronald Jones et al v. FCA US LLC et al*, Los Angeles Superior Court, Case No. BC594493, May 30, 2017 Order (finding $325.00 per hour to be a reasonable rate and awarding $26,800.80).

33.    Based on 11 publically available motions for fees, since 2017, Plaintiffs' counsel have requested fees ranging from a low of $26,566.41 to a high of $163,702.26, regardless of the amount of work done or the immediacy of the trial date. Adding even the lowest range of attorney's fees previously awarded to Plaintiffs' counsel—$12,054.00—to the amount of actual damages and civil penalties—$63,015.45—results in a total of $75,069.45, which exceeds the $75,000 threshold. *See Treuhaft*, 2021 WL 2864877, *2 (holding defendant properly relied on evidence from Plaintiff's counsel's fee applications submitted in similar litigation, and noting Plaintiff's failure to present evidence suggesting a smaller award was likely).

34.    Plaintiffs also seek punitive damages. *See* Compl., ¶¶ 35-47 (fraudulent inducement cause of action), Prayer, ¶ h. Plaintiffs' sixth cause of action does not arise from contract and "[i]t is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler Corp*., 261 F.3d 927, 945 (9th Cir. 2001) (citing *Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240 (1943); *Goldberg v. CPC Int'l, Inc*., 678 F.2d 1365, 1367 (9th Cir. 1982)). Punitive damages at stake may be established by citing a case alleging violation of the same (or similar) statute in which punitive damages were awarded based on the punitive-compensatory damages ratio. *See Greene v. Harley-Davidson, Inc*., 965 F.3d 767, 772–73 (9th Cir. 2020). That ratio can be shown without traditional "evidence," and citation to precedent upholding a specific ratio is sufficient. *Id*.

NOTICE OF REMOVAL OF ACTION
CASE NO. 2:22-cv-1456

35.   The amount in controversy includes all amounts "'at stake' in the litigation, whatever the likelihood that [Plaintiff] will actually recover them." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). Here, at least $42,000.00 in punitive damages (a conservative estimate) is at stake. $42,000.00 in punitive damages would be slightly under a 2:1 multiple of the estimated actual damages ($21,005.15 x 2 = $42,010.30). Notably, in at least a handful of similar cases, courts have awarded punitive damages based on comparable punitive-compensatory damages ratios. *See In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Lit.*, No. MDL 2672 CRB (JSC), 2019 WL 670608, at *2, 7–8 (N.D. Cal. Feb. 19, 2019) (at least $50,000 in punitive damages at stake in 33 MDL member cases, some of which included a claim for violation of the CLRA, permitting up to a ~5:1 ratio of punitive-compensatory damages ratio); *Johnson v. Ford Motor Co.*, 135 Cal. App. 4th 137, 150 (2005) (on remand, affirming punitive damages award of $175,000, just less than a 10:1 ratio). Thus, here, punitive damages will push the amount in controversy well over the $75,000.00 threshold.

36.   A diverse defendant is entitled to have its case heard in federal court. *See Guaranty Trust Co. v. York*, 326 U.S. 99 (1945) ("Diversity jurisdiction is founded on assurance to non-resident litigants of courts free from susceptibility to potential local bias."); *Young v. Ford Motor Co.*, No. CV F 07-0297 LJO SMS, 2007 WL 1847663 (E.D. Cal. June 27, 2007) ("A defendant's right to remove a case that could be heard in federal court is at least as important as the plaintiff's right to the forum of his choice"; internal cite omitted). Accordingly, Congress and federal appellate courts have taken steps to combat gamesmanship and improper reliance on a purported presumption against removal aimed at depriving a nonresident defendant of its right to have its case heard in federal court. *See, e.g., Academy of Country Music v. Continental Casualty Co.*, 991 F.3d 1059 (9th Cir. 2021) (reversing remand and holding notice of removal need not prove subject matter jurisdiction; allowing right of appeal when remand based not on a colorable § 1447(c) ground); *Destfino v.*

NOTICE OF REMOVAL OF ACTION
CASE NO. 2:22-cv-1456

*Reiswig*, 630 F.3d 952 (9th Cir. 2011) (allowing removal by later-served defendants, noting Supreme Court has "relaxed its presumption against removal"); *see* generally, Federal Courts Jurisdiction and Venue Clarification Act of 2011, Public Law 112–63 (Dec. 7, 2011) (amending removal statute to allow removal more than one year after commencement of the action where plaintiff hides the actual amount in controversy to prevent removal, a principle that also applies to re-removal).

37.    In sum, based on Plaintiffs' own allegations, the available information reveals that the amount in controversy in this case will exceed the $75,000 threshold necessary for diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The sales price—the actual price paid or payable—was $35,749.44 (*see* Burnett Decl., ¶¶ 15), the maximum civil penalty would therefore be $42,010.30 (*id*., ¶ 17-18), and even the lowest attorney's fee awarded to Plaintiffs' counsel has been $12,054.00 (while their average request in similar cases exceeds $75,000). Adding all these figures together—even excluding punitive damages—show that Plaintiffs could recover in excess of $89,000.00, well over the statutory threshold. *See Korn*, 536 F. Supp. 2d at 1205 ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.").

38.    Should the Court require further proof of the amount in controversy, Ford requests the ability to conduct to conduct jurisdictional discovery by interrogatories or depositions to support that the amount-in-controversy is satisfied pursuant to 28 U.S.C. § 1332.

## DEMAND FOR JURY TRIAL

Defendant Ford Motor Company demands a trial by jury on all issues that may be tried to a jury.

//

//

NOTICE OF REMOVAL OF ACTION
CASE NO. 2:22-cv-1456

1    Dated: March 3, 2022         Respectfully submitted,

2                                         SHOOK, HARDY & BACON

3

4                             By:   *_/s/ Samantha K.N. Burnett_*

5                                 AMY MACLEAR
                                SAMANTHA K.N. BURNETT

6                                 SHANE B. KOLDING

7                                 Attorney for Defendants

8                                 FORD MOTOR COMPANY